1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ANA VALLE,                              Case No. 16-cv-02358-JSC

8              Plaintiff,

9         v.                                 **ORDER RE CROSS MOTIONS FOR
                                             SUMMARY JUDGMENT**
10   NANCY A. BERRYHILL,
                                             Re: Dkt. Nos. 15, 21
11             Defendant.

12

13        Plaintiff Ana Valle seeks social security benefits for a combination of physical and mental

14   impairments, including: status post breast cancer, status post bilateral breast mastectomy and

15   breast reconstruction, chronic pain, fibromyalgia, and depression.  Plaintiff brings this action

16   pursuant to 42 U.S.C. Section 405(g), seeking judicial review of a final decision by Defendant

17   Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration, denying

18   Plaintiff's application for disability benefits.[1]  Now pending before the Court is Plaintiff's motion

19   for summary judgment and Defendant's cross-motion for summary judgment.[2]  (Dkt. Nos. 15, 21.)

20   For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary Judgment and

21   DENIES Defendant's Cross-Motion for Summary Judgment.

22                                  **LEGAL STANDARD**

23        A claimant is considered "disabled" under the Social Security Act if he meets two

24   requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

25   _____

26   [1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is
     therefore substituted for Carolyn W. Colvin as the Defendant in this action.  *See* 42 U.S.C. §
27   405(g); Fed. R. Civ. P. 25(d).

28   [2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c). (Dkt. Nos. 6 & 8.)

First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining:

> (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do his or her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work."

*Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## PROCEDURAL BACKGROUND

In June 2012, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. (Administrative Record (AR) 193.) Plaintiff's claim was initially denied in December 2012, and then again upon reconsideration in June 2013. (AR 7, 26, 65, 72, 113.) Thereafter, Plaintiff requested a hearing which was held on May 23, 2014. Plaintiff testified and was represented by her attorney Steven Bruce. The ALJ subsequently denied Plaintiff's application in a written decision. (AR 10-22.) Plaintiff filed a request for review, arguing that the ALJ committed errors of law and that her decision was not supported by substantial evidence. (AR 293-297.) The Appeals Council denied review of Plaintiff's application, resulting in the ALJ's decision becoming the Commissioner's final decision. (AR 1-6.) Plaintiff subsequently commenced this action for judicial review and moved for summary judgment. (Dkt. No. 15.) Defendant then crossed moved for summary judgment and for affirmance of the Commissioner's final decision. (Dkt. No. 21.)

Plaintiff was born on July 23, 1970.  (AR 36.)  She has experienced back pain since 1996.  (AR 1059.)  In 1997 she injured her back at work and had back surgery.  (AR 1056.)  In 1998 Plaintiff attended a pain management program at St. Francis Hospital.  (AR 1056, 1061.)  In the following years her chronic back pain spread to other parts of her body.  (AR 1059.)

Plaintiff alleges she has been unable to return to work since she was diagnosed with stage II breast cancer in July 2011.  (AR 36, 41, 1147.)  Plaintiff underwent a mastectomy and chemotherapy treatment.  (AR 41.)  Plaintiff also experiences fibromyalgia, back pain, joint pain, knee pain, anxiety, and depression.  (AR 41.)

## I.    Medical History

Plaintiff has been a regular patient of Kaiser Permanente since 2010.  (AR 310-1149.)  Her primary doctor is Dr. Yunie Kim.  (AR 712.)  Plaintiff has a medical history of hypothyroidism, lumbar fusion, fibromyalgia, chronic pain, breast cancer, vitamin D deficiency, constipation, phlebitis or thrombophlebitis of the superficial vein of the upper limb, hyperlipidemia, anxiety, and depression.  (AR 310, 589,595.)  Plaintiff has received 19 medical prescriptions to address these health conditions.  (AR 345-346.)

Plaintiff began seeing Dr. Michelle Yang Sun at Kaiser in August 2010. (AR 313.)  In addition to the medical conditions described above, Plaintiff complained of joint, hip, knee, and increasing neck and back pain.  (AR 314, 320-21, 369, 441)  Plaintiff reported it was painful to walk up stairs.  (AR 441.)  Plaintiff informed Dr. Sun that she had low energy and had lost her job in 2010.  (AR 322.)  Plaintiff reported feeling anxious about her breast cancer surgery and continued to experience whole back and elbow pain.  (AR 330.)  In August 2011 Plaintiff was to see Dr. Sun in person.  (AR 330.)  Dr. Sun diagnosed Plaintiff with anxiety associated with depression and proscribed citalopram.  (AR 330, 332.)  Dr. Sun also proscribed Etodolac and Naproxen for Plaintiff's pain.  (AR 365.)

Plaintiff's husband, Jose Villanueva, became Plaintiff's primary caretaker when Plaintiff was diagnosed with breast cancer.  (AR 340-342.)  In 2012, Plaintiff began recovering from breast surgery and underwent rounds of chemotherapy treatment.  (AR 503.)  As a result of

chemotherapy, Plaintiff experienced significant fatigue, nausea, constipation, mouth sores, mucosa symptoms, teeth and sinus sensitivity, hair and appetite loss, shortness of breath, bloating, deepening back pain, musculoskeletal pain, and tingling in her feet.  (AR 449, 466, 474, 503, 514.)

In 2013, Plaintiff's anxiety and depression continued.  (AR 585.)  Plaintiff experienced excessive worrying, crying spells, insomnia, and decreased energy and concentration.  (AR 585.)  Plaintiff felt overwhelmed due to past work harassment and verbal abuse and was fearful of finding new work.  (AR 585.)  Plaintiff worried about her cancer returning, particularly because of her pain and fatigue.  (AR 1121.)  She was also fearful about a blot clot surgery she needed after a bad experience trying to establish an IV.  (AR 590.)  She felt anxious about her upcoming breast reconstruction surgery and port removal.  (AR 612.)  Plaintiff was diagnosed with major recurring depression and anxiety disorder.  (AR 612.)

In addition to her psychological conditions, Plaintiff's physical challenges continued into 2013.  Plaintiff felt "overwhelming feelings of fatigue and pain," "constant body pain," and "a heaviness from this that stops her from functioning in her daily life."  (AR 590.)  She complained of "no energy to do daily tasks."  (AR 590.)  Her chronic constipation and pain issues also continued.  (AR 595, 589.)  Plaintiff started a chronic pain program in 2013, but was initially unable to complete the paperwork due to anxiety and discomfort.  (AR 595.)  The chronic pain program included physical therapy.  (AR 728.)

On June 18, 2013, Plaintiff underwent bilateral breast reconstruction surgery.  (AR 649.)  Around this time Plaintiff also experienced: a skin problem with light areas on her hands, armpits, and groin, pain in her jaw with some clenching and difficulty chewing, leg, knee, and hip pain, weakness in her hands, heartburn, and difficulty sleeping due to her chronic pain.  (AR 656, 785, 1056.)  Plaintiff sleeps about four to five hours per night, but needs eight.  (AR 1061.)

In 2014, Plaintiff experienced hot flashes, weight gain, lower abdominal pain, and continued chronic constipation, back pain, fibromyalgia, vitamin D deficiency, anxiety disorder, and major depression.  (AR 918-919, 937, 943-944.)  Plaintiff also participated in the "most vulnerable patient" program at Kaiser Permanente.  (AR 1147.)  She felt overwhelmed by her illness and the many surgeries she had to undergo.  (AR 1147.)

4

**II.     Medical Evaluations**

     **A.     Treating Physician Dr. Yunie Kim**

     Dr. Kim is Plaintiff's treating physician.  (AR 291.)  On May 5, 2014, Dr. Kim conducted a medical assessment of Plaintiff's ability to do work related activities.  (AR 712.)  Dr. Kim concluded that Plaintiff's chronic anxiety would impact her ability to deal with work stress, and that her depression can affect her memory, mood, and interactions with others.  (AR 713-714.)  Dr. Kim found that Plaintiff has weak grip strength and can only lift less than 10 pounds and less than 5 pounds with frequency during an eight hour workday.  (AR 715.)  Dr. Kim also concluded that Plaintiff can stand and/or walk for only 1-2 hours per day and sit for six hours in an eight hour workday.  (AR 715.)  Dr. Kim recommended the following environmental restrictions due to Plaintiff's impairments: heights, moving machinery, extreme temperatures, chemicals, dust, and noise.  (AR 716.)

     **B.     Examining Psychiatrist Dr. Bruce Pither**

     Dr. Bruce Pither examined Plaintiff on October 20, 2012.  Plaintiff is originally from Mexico and moved to the Bay Area when she was 10 years old.  (AR 554.)  She dropped out of school after tenth grade to support her family.  (*Id*.)  She received her GED in 2000.  She experienced chronic neck and back pain which was accommodated accordingly.  (*Id*.)  Plaintiff then attended City College of San Francisco and earned a certificate in Community Health.  (AR 555.)  Plaintiff's employment history includes working at a clothing store, taking orders at a pizza shop, and answering phones and doing case work at two domestic violence hotlines.  (AR 555.)  Plaintiff has not worked full time since December 2010.  (*Id*.)

     Plaintiff reported chronic back and neck pain.  (*Id*.)  This back and neck pain affects Plaintiff's whole system.  (*Id*.)  Plaintiff reported feeling weak most of the time, as well as pain, numbness, and swelling in her arms, hands, and fingers.  (*Id*.)  Plaintiff stated she was taking citalopram for depression and lorazepam for relaxation and sleep.  (*Id*.)  Plaintiff's weakness makes it difficult to manage her chronic pain.  (*Id*.)  Dr. Pither concluded that it appears to be a "vicious cycle that affects her mood and sleep."  (*Id*.)  Plaintiff also reported that her former employer, the pizza restaurant, did not deduct enough SSI from her paycheck and she was

informed she owes the federal government $20,000. (*Id.*) This development makes her even more anxious, which exacerbates her chronic neck and back pain. (*Id.*)

Dr. Pither reported that Plaintiff appeared pleasant and cooperative, but extremely timid. (AR 556.) Plaintiff was oriented to time and place, but stated she was feeling forgetful and her general state was scared, unsafe, and weak. (*Id.*) Her judgment, affect, thought content, dress, eye contact, and mood were neutral and adequate. (*Id.*)

Dr. Pither concluded that Plaintiff is "unable to engage in any work activities at this time." (*Id.*) Plaintiff's activities are limited by her "pain disorder and myriad medical problems" which "may not appeal to potential employers" and "prohibit her from engaging in any form of work activities." (*Id.*) Dr. Pither also reported that Plaintiff is marginally capable of caring for herself in terms of bathing, washing her clothes, and nourishing herself, but that she is assisted by her husband. (*Id.*) He also stated that if Plaintiff could work, she would be able to understand, remember, and carry out simple instructions, but that she demonstrates some difficulty "concentrating, persisting, and pacing." (*Id.*) Dr. Pither concluded "if [Plaintiff] could work, she would." (*Id.*)

### C. Non-Examining Doctors

#### 1. Dr. Dan Funkenstein

Dr. Funkenstein submitted a report regarding Plaintiff on December 3, 2012. (AR 41.) He noted Plaintiff underwent four rounds of chemotherapy, has anxiety due to her pain, and takes citalopram for depression. (AR 40, 41.) He concluded Plaintiff had three severe impairments, breast cancer, disorders of the back, and somatoform disorder, and that these impairments can reasonably be expected to cause Plaintiff pain. (AR 42-43.) In regards to mental capacity, Dr. Funkenstein found Plaintiff had sustained concentration and persistence limitations, and moderately limited ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual. (AR 45-46.) He also concluded that Plaintiff's ability to complete a normal workday or week without interruption from her psychological symptoms or to perform at a consistent pace without an unreasonable number of rest periods was moderately

limited.  (AR 46.)

### 2. Dr. K. Rudito

Dr. Rudito submitted a report regarding Plaintiff in September 2012.  (AR 45.)  He concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for two hours, and sit for six hours in an eight hour work day.  (AR 44.)  He also found that Plaintiff had postural limitations such that she could frequently climb stairs, kneel, and crouch by bending at the knees, but could only occasionally climb ladders or scaffolds or stoop by bending at the waist.  (AR 44.)  Dr. Rudito concluded that Plaintiff is not disabled.  (AR 48.)

### 3. Doctors Elizabeth Covey and J.R. Saphir

Doctors Elizabeth Covey and Dr. J.R. Saphir submitted the medical opinions for Plaintiff's disability reconsideration.  Dr. Covey, similar to Dr. Funkenstein, concluded Plaintiff's impairments could reasonably be expected to cause her pain.  (AR 57.).  Dr. Covey also agreed with Dr. Rudito's opinion that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for two hours, and sit for six hours in an eight hour work day.  (AR 58-59.)  Dr. Covey concluded that Plaintiff's ability to carry out short and simple instructions, work in coordination with others, and make simple work decisions was not significantly limited; however he concluded that Plaintiff's ability to maintain attention, carry out detailed instructions, sustain an ordinary routine, or complete a normal weekday without interruptions from her mental symptoms was moderately limited.  (AR 60-61.)   In his June 3, 2013 determination, Dr. Saphir, similar to Dr. Rudito, concluded that Plaintiff was not disabled.  (AR 63.)

## III.    Administrative Hearing

Plaintiff's disability hearing was held on May 23, 2014 in San Francisco.  (AR 113.)  Jennifer Horne was the presiding administrative law judge.  (*Id*.)  Plaintiff, her husband Jose Villanueva, witness Cinzia Bartolomeo, and vocational expert Lynda Berkeley were present and testified.  (*Id*.)

### A.    Plaintiff's Testimony

When Plaintiff's last job ended in 2010 she did not look for new work because she was very depressed.  (AR 123, 126.)   When she lost her job, Plaintiff also lost her home and health

insurance. (AR 123.) Plaintiff obtained health benefits through her husband's insurance six months later, in July 2011. (AR 124, 126.) At this time Plaintiff was diagnosed with breast cancer. (AR 126.) Plaintiff didn't apply to obtain disability benefits right away because her body "couldn't function" and everything was more stressful. (AR 129.)

Plaintiff wasn't feeling well even before she was diagnosed with breast cancer, and learning that she had it made "everything worse." (AR 130.) The pain made it difficult for the Plaintiff to sleep or function. (AR 131.) Plaintiff took Vicodin after her breast surgery but later switched to Tylenol because her health providers did not want Plaintiff taking anything stronger. (AR 132.)

Plaintiff can only sit or stand for one hour at time due to her back pain and fatigue. (AR 134.) Plaintiff can only walk for 30-40 minutes before she feels extremely tired. (*Id.*) Lifting weights is very difficult for her. (AR 135.) Sometimes plates or cups fall out of her hands due to weakness in both arms. (*Id.*) Plaintiff's lymph nodes were removed when she was diagnosed with cancer and as a result sometimes her arms swell, become inflamed, and are painful all over. (*Id.*) When the pain is severe Plaintiff lies down and rests which relieves some of her discomfort. (AR 136.) Plaintiff feels pain in her jaw, neck, arms, legs, and back. (*Id.*) Plaintiff is taking medication for her anxiety and depression. (AR 139-140.)

Plaintiff accompanies her father to his chemotherapy treatments by driving him to his appointment, sitting for 30 minutes with him at the appointment, and driving him home. (AR 141.) Plaintiff also performs some cooking, cleaning, and shopping. (AR 142.) Plaintiff mops and cleans approximately once a week. (*Id.*) Plaintiff is unable to vacuum due to the difficulties with her hands and back. (AR 143.) She occasionally goes for a walk or grocery shopping with her sister. (AR 146.) Plaintiff also buys groceries alone. (*Id.*) Due to her medical and mental condition, Plaintiff's physical relationship with her husband has deteriorated. (AR 148-149.) It has become difficult for Plaintiff to enjoy spending time with her family when they visit. (*Id.*)

**B.    Spouse's Testimony**

José Villanueva, Plaintiff's husband, testified that Plaintiff's illness has limited their ability to do activities together such as camping and spending time outdoors. (AR 150-151.) Plaintiff

can't be out in the sun too long because even the natural light bothers her. (AR 151.) Plaintiff has difficulty cooking on a consistent basis, sometimes she can manage for an hour or so. (AR 152.) Plaintiff is able to perform light cleaning, but has difficultly lifting and opening items – holding a gallon of milk or opening a bottle of water is challenging. (*Id*.)

Plaintiff is depressed and constantly worries that her cancer will return or that she will be diagnosed with a different type of cancer due to the other illnesses in her family. (*Id*.) Plaintiff can occasionally work for an hour or two, but not on a consistent basis. (AR 153 - 154.) The main cause of Plaintiff's inability to work is her pain. (*Id*.)

### C. Social Worker's Testimony

Cinzia Bartolomeo is a social worker and case manager at Kaiser who had been working with Plaintiff for approximately one month at the time of the hearing. (AR 156-157.) Ms. Bartolomeo helped Plaintiff obtain food stamps and general assistance. (AR 167.) Ms. Bartolomeo was in the process of helping Plaintiff obtain a shower bar to help Plaintiff bathe. (AR 158.) Ms. Bartolomeo was also in the process of connecting Plaintiff to organizations that provide social and mental health support to breast cancer survivors. (AR 157-158.)

Plaintiff can get dressed and go shopping herself, therefore Ms. Bartolomeo did not help Plaintiff apply for grooming assistance. (AR 168-169.) In regards to Plaintiff's mental health, Plaintiff appears very overwhelmed by her physical condition which is having a negative effect on her mental condition causing Plaintiff to be very anxious, depressed, and forgetful. (AR 170.) Plaintiff appears to be "trying the best she can do....but it's definitely difficult, really, really difficult for her to manage her life." (AR 170.)

### D. Vocational Expert's Testimony

The ALJ presented Vocational Expert ("VE") with six hypotheticals. In the first hypothetical, the individual is similar to Plaintiff in age, education, and past work history. The individual can lift 10 pounds and carry 20 pounds occasionally, sit for six hours and stand for two hours in an eight hour day, occasionally climb ropes, and is limited to simple routine work. The VE testified that the individual can perform the full range of sedentary work, including: Plaintiff's former job of an order clerk, telephone quotation clerk (DOT 237.367-046, of which there are

9

approximately 1,000 jobs in California and 58,000 in the United States), addresser (DOT 209.587-010, of which there are 2,400 jobs in California and 8,800 nationally), final assembler of optical goods (DOT 713.687-018, of which there are 3,000 jobs in California and 35,000 in the United States), and document preparer (DOT 249.587-018, of which there are 5,000 jobs in California and 44,700 in the United States). (AR 174.)

In hypothetical two, the individual was the same as hypothetical one; however the individual could sit or stand for no more than an hour. (AR 176-177.) The VE testified that the individual could still perform the order clerk, final assembler, and optical goods jobs from hypothetical one because they offer sit/stand options. (AR 177.) The VE stated that the individual could also perform the work of a small products assembler (DOT 7063684-022, of which there are 6,000 jobs in California, and 100,0000 in the United States) and ticket seller (DOT 211.467-030, with 4,500 jobs in California and 45,000 in the United States); however the small products assembler requires the individual to lift up to 20 pounds while working on a high bench. (AR 178-180.)

In hypothetical three, the individual was the same as hypothetical two; however he could only lift 10 pounds. (AR 180.) The VE testified the individual could not perform any light jobs, but could perform sedentary work such as the order clerk, optical assembler, and ticket seller. (AR 180-182.) In hypothetical four, the individual is the same as hypothetical one; however the individual cannot do any climbing. (AR 183.) The VE testified individual four can perform the same jobs as individual one. (AR 183.) In hypothetical five, the individual is the same as hypothetical two but also cannot do any climbing. (AR 184.) The VE testified that this individual could do the same jobs as individual two. (AR 184.) In hypothetical six, the individual is the same as hypothetical five, but would also be off task for more than 10 percent of the workday. (AR 184.) The VE testified that individual six would be precluded from all full-time employment. (AR 184.)

Plaintiff's attorney inquired whether an individual in hypothetical two who needs to take a 30 minute break after every hour of work could perform sedentary work. (AR 185.) The VE testified that no, such an individual "would barely be working a half a day." (AR 185-186.)

### III.    ALJ's Findings

In a September 25, 2014, written decision, the ALJ found Plaintiff is not disabled under Section 1614(a)(3)(A) of the Social Security Act, taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 7-22.)

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, July 1, 2011. (AR 12.) At the second step, Plaintiff had the following severe impairments: status post breast cancer, status post bilateral breast mastectomy and breast reconstruction, chronic pain, fibromyalgia, and depression. (*Id*.) These impairments "significantly limit the claimant's ability to do basic work-related activities." (*Id*.) Plaintiff's hypothyroidism, hyperlipidemia, and history of lumbar fusion are "non severe" impairments because the hypothyroidism and hyperlipidemia did not last longer than 12 months, cause significant limitations in Plaintiff's ability to do work functions, there were no recent abnormal findings to support any limitations Plaintiff may allege, and the medical records show that Plaintiff's back pain is "helped with over-the-counter Advil." (AR 12-13.)

At the third step, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 404.1525, 404.1526). The ALJ considered the listings of 12.04. (AR 13.) The ALJ also considered the "paragraph B" criteria, as to whether Plaintiff's mental impairment resulted in at least two of the following: marked restriction of daily living activities, marked difficulties in maintaining social functioning, concentration, persistence, pace, or repeated episodes of decompensation of an extended duration (three episodes in one year or an average of once every four months lasting two weeks each). (*Id*.)

Plaintiff does not have any restrictions of daily living because Plaintiff testified that she can shop, cook, do chores, and has no problems with personal care. (*Id*.) In regards to social functions, Plaintiff has mild difficulties getting along and spending time with others, shopping, and using public transportation. (*Id*.) Plaintiff has moderate difficulties with concentration, persistence or pace such as completing tasks, following instructions, and mental fatigue. (*Id*.) As

11

a result of finding that Plaintiff's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation, the ALJ concluded the "paragraph B" criteria were not satisfied. (*Id.*) The "paragraph C" 12.04 criteria was not satisfied because "the evidence fails to establish the presence of a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than minimal limitation of ability to do basic work activities." (AR 13-14.)

At the fourth step, Plaintiff can perform sedentary work, lift up to 10 pounds, sit for six hours and stand for two hours in an eight hour work day, sit and stand at will with no sitting or standing for more than one hour at a time, occasionally grip, balance, stoop, kneel, crouch, crawl, push, and pull. (AR 14.) Plaintiff can never climb. (*Id.*) As a result, Plaintiff's work should be limited to simple, routine, repetitive, and unskilled work tasks. (*Id.*) The findings of the objective medical evidence do not provide strong support of the Plaintiff's allegations of disabling limitations. (AR 16.) Plaintiff's chronic pain was not persuasive because Plaintiff traveled during her chemotherapy treatment. (*Id.*) Plaintiff's breast cancer has not returned and Plaintiff tolerated her medication well. (*Id.*)

In regards to her chronic pain and fatigue, Plaintiff complained she was often tired but also got up, went for walks, and exercised. (AR 17.) The treatment records from March and April of 2013 indicated that the reconditioning program, group therapy, cognitive behavioral therapy and relaxation practice seemed to help Plaintiff because in May 2013 she reported that she could sit longer, sleep better, and take better care of herself. (*Id.*) Despite the fact Plaintiff's chronic pain continued into 2013 Plaintiff took her father to his cancer treatments and doctors instructed Plaintiff to exercise, despite her pain, in order to control her weight. (*Id.*) Plaintiff's pain must not be as severe as she alleges or work-preclusive because she takes Advil and Tylenol. (AR 18.)

Plaintiff's allegations about her mental health are not credible because her medical treatment has been "conservative and not indicative of total disability" and the treatment medications helped her anxiety and depression. (AR 18.) Plaintiff's daily living activities including walking, personal care, cooking simple meals, laundry, light cleaning, reading, going out a few times a week, using transportation, and taking her father to his cancer treatment

12

appointments are "not what I would expected from one as impaired as the claimant." (*Id.*)

The ALJ accorded some weight to Dr. Kim's physical assessments, but concluded Dr. Kim's finding that Plaintiff can only stand or walk less than two hours in an eight hour day is not supported by the medical evidence or Plaintiff's testimony that she can walk one hour at one time and stand for half an hour at one time. (AR 19.) The ALJ only accorded some weight to Dr. Kim's assessment of Plaintiff's mental condition because mental health is not Dr. Kim's area of expertise. (*Id.*) The ALJ accorded some weight to Dr. Pither's finding that Plaintiff could not work because of her chronic pain and depression, but disagreed that Plaintiff would work if she could. (*Id.*) The ALJ accorded some weight to Ms. Bartolomeo's testimony regarding Plaintiff's mental limits because although Ms. Bartolomeo is a registered nurse, she is not a mental health expert. (*Id.*) The ALJ did give great weight, however, to Ms. Bartolomeo's testimony about the services she provides and Plaintiff's needs because it "shows that, despite her impairments, the claimant is still able to perform a wide range of activities with the ability to focus, concentrate, and complete tasks, which belies her testimony that she is disabled." (AR 20.)

In step five, the ALJ accepted the VE's expert opinion. (AR 21.) Plaintiff could perform her past work because the VE testified that someone with Plaintiff's background and residual functional capacity could do so. (AR 20.) The VE testified that an individual with limitations similar to Plaintiff's can perform unskilled occupations such as an optical final assembler (with 3,000 jobs in California and 35,000 nationally) and a ticket seller (with 4,500 jobs in California and 45,000 nationally). (AR 21) The ALJ concluded that a finding of "not disabled" is appropriate because Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy". (*Id.*)

## IV. Appeals Council

Plaintiff filed a request for review on September 25, 2014, arguing that the ALJ committed errors of law and that her decision was not supported by substantial evidence. (AR 293-297.) The Appeals Council denied Plaintiff's appeal on February 25, 2016, concluding there was no reason to grant review. (AR 2.) The Appeals Council's decision rendered the ALJ's opinion final.

United States District Court
Northern District of California

Pursuant to 42 U.S.C. § 405(g), the Court has authority to review an ALJ's decision to deny benefits. When exercising this authority, however, the "Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it is "more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (internal citations and quotation marks omitted). To determine whether the ALJ's decision is supported by substantial evidence, the reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal citations and quotation marks omitted).

Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are roles reserved for the ALJ. *See Andrews*, 53 F.3d at 1039. "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion.") "The court may not engage in second- guessing." *Tommasetti*, 533 F.3d at 1039. "It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the Commissioner's determination as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, not the Court's, to resolve conflicts in the evidence." *Bertrand v. Astrue*, No. 08-CV-00147-BAK, 2009 WL 3112321, at *4 (E.D. Cal. Sept. 23, 2009). Similarly, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court can only affirm the ALJ's findings based on reasoning that the ALJ herself asserted. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). In other words, the Court's consideration is limited

to "the grounds articulated by the agency[.]" *Cequerra v. Sec'y*, 933 F.2d 735, 738 (9th Cir. 1991).

## DISCISSION

Plaintiff argues the ALJ erred as a matter of law by: (1) finding Plaintiff was capable of performing a full range of sedentary work and relying on the VE's testimony despite Plaintiff's physical and psychological limitations; (2) making an improper finding that Plaintiff's back pain is non-severe; and (3) finding Plaintiff was not disabled during cancer treatment. Plaintiff requests the Court reverse and remand to the Commissioner for payment of benefits.

## I.    The ALJ's Consideration of Medical Opinion Evidence

### A.    Legal Standard

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.").

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (internal citation omitted). Ultimately, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin,* 759 F.3d 995, 1012-1013 (9th Cir. 2014) (internal citation omitted). In conducting this review, the ALJ "must consider the entire record as a whole." *Hill*, 698 F.3d at 1159 (internal citations omitted). "An ALJ may not cherry-pick and rely on portions of the medical record which bolster his findings." *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ may not selectively rely on some entries and ignore others "that indicate continued, severe impairment"). "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's [,]" "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey*, 849 F.2d at 422.

### B.   Analysis

To reject the opinions of Plaintiff's treating physician, Dr. Kim, and the examining psychiatrist, Dr. Pither, in favor of the non-examining consultants, Drs. Rudito, Covey, and Saphir, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for doing so. *See Lester*, 81 F.3d at 830-31. The ALJ did not do so.

#### 1.   *Treating Physician Dr. Kim*

Dr. Kim is Plaintiff's treating physician. The ALJ accorded some weight to Dr. Kim's

physical assessments, but concluded Dr. Kim's finding that Plaintiff can only stand or walk less than two hours in an eight hour day is not supported by the medical evidence.

The ALJ erred by failing to apply the factors relevant to determining the extent to which the opinion of a treating physician should be credited. Although the ALJ suggested that Dr. Kim's opinion is "generally inconsistent with the medical evidence of record and with my findings as well" such that it should not be given dispositive weight, 20 C.F.R. § 404.1527(c)(2), "the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo v. Berryhill*, 862 F.3d 987, 998 (2017) (citing *id.* § 404.1527(c)(2)–(6)). "This failure alone constitutes reversible legal error." *Id.*

The ALJ also concluded Dr. Kim's findings regarding Plaintiff's ability to sit and stand are not supported by Plaintiff's testimony that she can walk one hour at one time and stand for half an hour at one time. This reasoning is clearly erroneous. First, Ms. Valle's testimony does not contradict Dr. Kim's findings. Just because Plaintiff can stand for one hour at a time does not mean she can stand for two or more hours in an eight hour day. Second, an ALJ may not reject an examining physician's opinions by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (where the ALJ appears to have relied on her doubts about the plaintiff's overall credibility to reject the entirety of the physician's report). The ALJ's speculation that Plaintiff can stand more than two hours in an eight hour day because she testified she can stand for one hour at a time does not amount to "substantial evidence." *See id.*

The ALJ only accorded some weight to Dr. Kim's assessment of Plaintiff's mental condition because mental health is not Dr. Kim's area of expertise. It is true that in general more deference is given to the "opinion of a specialist about medical issues related to his or her area of specialty" than to those who are not specialists. *See Benecke v. Barnhart,* 379 F.3d 587, 594 n. 4 (9th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)). However, it is also true that "[u]nder general principles of evidence law," a duly licensed treating physician "is qualified to give a medical opinion as to [the claimant's] mental state as it relates to her physical disability even

17

though [that physician] is not a psychiatrist." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987). A duly licensed physician can practice and render psychiatric services, *i.e.,* prescribe psychotropic medication and conduct psychotherapy. *Id.* Therefore, Dr. Kim's opinion is competent psychiatric evidence, based on her clinical observations of Plaintiff's depression. *See id.* Furthermore, Dr. Kim's opinion that Plaintiff's depression would negatively her ability to work with others is in line with Dr. Pither's psychiatric opinion that Plaintiff is "unable to engage in any work activities" due to her chronic pain and depression.

Plaintiff argues the ALJ erred by never asking the VE a hypothetical with a sedentary residual functional capacity that contained bimanual dexterity and depression limitations. In hypothetical 6, the individual can lift 10 pounds frequently, carry 20 pounds occasionally, and is off task more than 10% of the workday. Dr. Kim recommended that Plaintiff not lift more than 5 pounds frequently or 10 pounds occasionally, and stated that Plaintiff has weak grip strength. The physical restrictions described in Dr. Kim's opinion are greater than hypothetical 6, but the VE ultimately concluded that the individual in hypothetical 6 would be precluded from all full-employment. Therefore a more restrictive hypothetical adding weak grip strength is unnecessary to make the same conclusion that Plaintiff is unable to work full-time.

2.    *Examining Psychiatrist Dr. Pither*

Dr. Pither, Plaintiff's examining psychiatrist, determined Plaintiff is limited by her "pain disorder and myriad medical problems" and had "difficulty concentrating" which "prohibit her from engaging in any form of work activities." The ALJ accorded some weight to Dr. Pither's finding that Plaintiff could not work because of her chronic pain and depression, but disagreed that Plaintiff would work if she could.

The ALJ did not follow the appropriate methodology for weighing an examining physician's medical opinion. The ALJ can reject Dr. Pither's opinion only by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216. The ALJ provides no legitimate stated reason for rejecting Dr. Pither's opinion. Furthermore, Dr. Pither's opinion that Plaintiff cannot work is entitled to greater weight than non-examining Drs. Saphir and Rudito's opinion that Plaintiff can work. *See Lester,* 81 F.3d at 830. As such, the ALJ

18

erred by giving Dr. Pither's opinions "some weight" and disregarding his conclusion that Plaintiff would work if she could. [3]

### 3. *Ms. Bartolomeo*

The ALJ gave greater weight to Ms. Bartolomeo's testimony than Dr. Kim or Dr. Pither's opinions because Ms. Bartolomeo's testimony "shows that, despite her impairments, the claimant is still able to perform a wide range of activities with the ability to focus, concentrate, and complete tasks, which belies her testimony that she is disabled." However, Plaintiff's ability to do simple household chores does not constitute specific or legitimate reasons for rejecting Dr. Kim's or Dr. Pither's medical opinions. *See Ryan*, 528 F.3d at 1198; *see also Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (ordering award of benefits for constant back and leg pain despite claimant's ability to cook meals and wash dishes). Moreover, claimants are not required to be utterly incapacitated to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Nor are many home activities easily transferrable to what may be "the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.*

The VE testified that a claimant would be unable to work if she has the physical limitations outlined in Dr. Kim's opinion and is off task 10% of the time due to difficulty with concentration, persistence, and pace, as identified in Dr. Pither's opinion. Therefore, the opinions of Dr. Kim and Pither "establishes that [Plaintiff] is entitled to benefits." *Lingenfelter v. Astrue*, 504 F.3d 1028, at 1041 n.12 (9th Cir. 2007). The ALJ's decision not to fully credit the opinions of Drs. Kim and Pither was erroneous.

## II. The ALJ's Credibility Determination

### A. Legal Standard

---

[3] Plaintiff also argues that the ALJ also erred by not finding Plaintiff disabled during the 13 months she was treated for cancer. However, Drs. Kim and Pither provided work restriction recommendations based upon their medical opinions concerning Plaintiff's chronic pain, weakness, depression, and anxiety. There is not enough evidence in the medical record nor Dr. Kim or Dr. Pither's opinions to conclude that Plaintiff's cancer treatment, alone, was a medical impairment that precluded employment.

The Social Security Administration's policy on determining Residual Functional Capacity ("RFC") directs ALJs to give "[c]areful consideration ... to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone." SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). If the record establishes the existence of an impairment that could reasonably give rise to such symptoms, the "ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012) ("Because the RFC determination must take into account the claimant's testimony regarding [her] capability, the ALJ must assess that testimony in conjunction with the medical evidence.").

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal citations and quotation marks omitted). The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "General findings are an insufficient basis to support an adverse credibility determination." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimant[ ][ is] not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.")

### B.     The Severity of Plaintiff's Pain

The medical record demonstrates that Plaintiff has experienced back pain since 1996, had

back surgery in 1997, and attended her first chronic pain management program in 1998. Plaintiff consistently complained of chronic back and neck pain since she became a patient with Kaiser in 2010. Plaintiff participated in a second chronic pain program through Kaiser in 2013, but was initially unable to complete the paperwork during the consult due to her discomfort. Both of Plaintiff's treating and examining physicians, Dr. Kim and Dr. Pither, noted that Plaintiff complained of chronic back and neck pain, and that this pain affected Plaintiff's entire system and general health.

The ALJ determined that Plaintiff met the first part of the two part test to determine whether her pain is credible. The ALJ concluded there is objective medical evidence that Plaintiff's breast cancer, chronic pain, fibromyalgia, and depression could reasonably be expected to produce the pain and symptoms alleged. *See Lingenfelter*, 504 F.3d at 1036. Since Plaintiff met the first part of the test, the ALJ could only reject Plaintiff's testimony regarding the severity of her symptoms due to evidence of malingering or by offering specific, clear and convincing reasons for doing so. *See id*. The ALJ erred in rejecting Plaintiff's testimony regarding the severity of her pain because there is no evidence of malingering and the ALJ failed to meet the demanding clear and convincing reasons standard. *See Moore,* 278 F.3d at 924.

The ALJ did not find Plaintiff's complaints regarding her back pain persuasive because Plaintiff went for walks, took her father to his cancer treatments, and was instructed to exercise. "Yet it is not inconsistent with disability that [Plaintiff] was not entirely incapacitated by fatigue at all times." *Trevizo*, 862 F.3d at 1002. Plaintiff was instructed by her medical providers to exercise in order to control her weight and manage her health. Plaintiff took 30 minute walks. Her occasional participation in this low intensity exercise is not inconsistent with her disability. Moreover, Plaintiff's periodic trips with her father to his cancer treatment appointments do not preclude a finding of disability. *See Howard v. Heckler,* 782 F.2d 1484, 1488 (9th Cir. 1986) (a claim of pain-induced disability is not gainsaid by capacity to engage in periodic restricted travel).

The ALJ decided Plaintiff's pain could not be severe because the treatment records from March and April of 2013 indicated that the chronic pain program, group therapy, cognitive behavioral therapy, and relaxation practice seemed to help Plaintiff. However, "treatment records

21

must be viewed in light of the overall diagnostic record." *Ghanim*, 763 F.3d at 1164. The medical records reflect that Plaintiff has consistently complained of chronic back and neck pain. Furthermore, "[o]ccasional symptom-free periods ... are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Plaintiff's improvement during the few weeks in 2013 when she participated in the pain program is not inconsistent with 20 years of chronic pain.

The ALJ also concluded that Plaintiff's pain must not be work-preclusive because she takes Advil and Tylenol and not stronger medications. However, the ALJ did not address the believability of Plaintiff's proffered reason that she took Vicodin but later switched to Tylenol because her health providers did not want Plaintiff taking stronger medication. An ALJ may not rely on "the claimant's failure to take pain medication where evidence suggests that the claimant had a good reason for not taking medication." *Fair*, 885 F.2d at 602. Plaintiff had good reason to not continue taking Vicodin – she was instructed by her health providers to do so, not because she was not in pain, but because of the adverse effect of stronger medication. In light of the recent opioid epidemic it is wrong to penalize a claimant for following her physician's instruction to avoid opioids. As such, the specific reasons the ALJ gave for disbelieving Ms. Valle's testimony about the severity of her pain symptoms are not "clear and convincing."

## III. Award of Benefits

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion"). "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded" for further proceedings. *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). Generally, however, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

1   would be required to find the claimant disabled on remand," *id.* at 1020, we remand for an award

2   of benefits.

3          Each of the "credit-as-true factors" is satisfied.  First, the record is fully developed.  It

4   totals hundreds of pages and includes treatment notes documenting dozens of doctor visits from

5   2010 to 2014 addressing Ms. Valle's various medical conditions.  The record also reflects

6   Plaintiff's testimony before the ALJ, her responses to questionnaires about her physical and

7   mental limitations, and the responses of her spouse, all of which corroborate her impairments.  Dr.

8   Kim's opinion is developed and substantiated by her treatment relationship with Plaintiff since

9   2010.  Moreover, the VE opined regarding the inability of an individual with Plaintiff's physical

10  and mental limitations, as described by Drs. Kim and Pither, to sustain work.

11         The other two prongs of the *Garrison* test are also satisfied. The ALJ failed to provide

12  legally sufficient reasons for rejecting the informed medical opinions of Plaintiff's primary

13  treating physician, Dr. Kim, and her examining physician, Dr. Pither, and instead improperly

14  substituted her judgment for that of the doctors.  If credited as true, the opinions of Drs. Kim and

15  Pither establish that Plaintiff is disabled, because the VE testified that someone with limitations

16  similar to Plaintiff would be unable to find full-time work.  Finally, there is no "serious doubt"

17  based on "an evaluation of the record as a whole" that Plaintiff is, in fact, disabled, given her

18  severe impairments of chronic back and neck pain, fibromyalgia, weakness, depression, and

19  anxiety. Thus, the requirements of the *Garrison* test are met and the Court remands for the

20  calculation and award of benefits.

21                                      **CONCLUSION**

22         For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary

23  Judgment and DENIES Defendant's Cross-Motion for Summary Judgment.

24         This Order disposes of Docket Nos. 15 and 21.

25         **IT IS SO ORDERED.**

26  Dated: August 29, 2018

27

28                                                          *Jacqueline Scott Corley*

JACQUELINE SCOTT CORLEY
United States Magistrate Judge